REED *v.* FARLEY, SUPERINTENDENT, INDIANA
STATE PRISON, ET AL.

No. 93–5418.   Argued March 28, 1994—Decided June 20, 1994

GINSBURG, J., announced the judgment of the Court and delivered the opinion of the Court with respect to Parts I, III, and all but the final paragraph of Part IV, in which REHNQUIST, C. J., and O'CONNOR, SCALIA, and THOMAS, JJ., joined, and an opinion with respect to Part II and the final paragraph of Part IV, in which REHNQUIST, C. J., and O'CONNOR, J., joined. SCALIA, J., filed an opinion concurring in part and concurring in the judgment, in which THOMAS, J., joined, *post*, p. 355. BLACKMUN, J., filed a dissenting opinion, in which STEVENS, KENNEDY, and SOUTER, JJ., joined, *post*, p. 359.

*Jerold S. Solovy* argued the cause for petitioner. With him on the briefs were *Barry Levenstam, Ellen R. Kordik,* and *Douglas A. Graham.*

*Arend J. Abel,* Deputy Attorney General of Indiana, argued the cause for respondents. With him on the brief were *Pamela Carter,* Attorney General, and *Matthew R. Gutwein, Wayne E. Uhl,* and *Suzann Weber Lupton,* Deputy Attorneys General.*

JUSTICE GINSBURG announced the judgment of the Court and delivered the opinion of the Court with respect to Parts I, III, and all but the final paragraph of Part IV, and an opinion with respect to Part II and the final paragraph of Part IV, in which THE CHIEF JUSTICE and JUSTICE O'CONNOR join.

The Interstate Agreement on Detainers Act (IAD), 18 U. S. C. App. §2, is a compact among 48 States, the District of Columbia, and the Federal Government. It enables a participating State to gain custody of a prisoner incarcerated in another jurisdiction, in order to try him on criminal charges. Article IV(c) of the IAD provides that trial of a transferred prisoner "shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State, but for good cause shown in open court, . . . the court

---

*Solicitor General Days, Assistant Attorney General Harris, Deputy Solicitor General Bryson,* and *Richard H. Seamon* filed a brief for the United States as *amicus curiae* urging affirmance.

having jurisdiction of the matter may grant any necessary or reasonable continuance." IAD Article V(c) states that when trial does not occur within the time prescribed, the charges shall be dismissed with prejudice.

The petitioner in this case, Orrin Scott Reed, was transferred in April 1983 from a federal prison in Indiana to state custody pursuant to an IAD request made by Indiana officials. Reed was tried in October of that year, following postponements made and explained in his presence in open court. Reed's petition raises the question whether a state prisoner, asserting a violation of IAD Article IV(c)'s 120-day limitation, may enforce that speedy trial prescription in a federal habeas corpus action under 28 U. S. C. § 2254.

We hold that a state court's failure to observe the 120-day rule of IAD Article IV(c) is not cognizable under § 2254 when the defendant registered no objection to the trial date at the time it was set, and suffered no prejudice attributable to the delayed commencement. Accordingly, we affirm the judgment of the Court of Appeals.

## I

In December 1982, while petitioner Reed was serving time in a Terre Haute, Indiana, federal prison, the State of Indiana charged him with theft and habitual offender status. Indiana authorities lodged a detainer[1] against Reed and, on April 27, 1983, took custody of him. The 120-day rule of IAD Article IV(c) thus instructed that, absent any continuance, Reed's trial was to commence on or before August 25, 1983.

At two pretrial conferences, one on June 27, the other on August 1, the trial judge discussed with Reed (who chose to represent himself) and the prosecutor the number of days needed for the trial and the opening date. At the June 27

---

[1] A detainer is "a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking . . . either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." *Carchman* v. *Nash*, 473 U. S. 716, 719 (1985).

conference, the court set a July 18 deadline for submission of the many threshold motions Reed said he wished to file, and September 13 as the trial date. That trial date exceeded IAD Article IV(c)'s 120-day limit, but neither the prosecutor nor Reed called the IAD limit to the attention of the judge, and neither asked for a different trial date. Reed did indicate a preference for trial at a time when he would be out of jail on bond (or on his own recognizance); he informed the court that he would be released from federal custody two weeks before September 13, unless federal authorities revoked his "good days" credits, in which case he would be paroled on September 14. App. 39; see *id.*, at 76.

At the August 1 pretrial conference, Reed noted his imminent release from federal custody and asked the court to set bond. *Id.*, at 76–79. In response, the court set bond at $25,000. Also, because of a calendar conflict, the court reset the trial date to September 19. *Id.*, at 79–81.[2] Reed inquired about witness subpoenas and requested books on procedure, but again, he said nothing at the conference to alert the judge to Article IV(c)'s 120-day limit, nor did he express any other objection to the September 19 trial date.

Interspersed in Reed's many written and oral pretrial motions are references to IAD provisions other than Article IV(c). See *id.*, at 28–31, 44 (alleging illegality of transfer from federal to state custody without a pretransfer hearing); *id.*, at 46 (asserting failure to provide hygienic care in violation of IAD Article V). Reed did refer to the IAD prescription on trial commencement in three of the written motions he filed during the 120-day period; indeed, one of these motions was filed on the very day of the August 1 pretrial conference.[3] In none of the three motions, however, did Reed

---

[2] Reed posted bond by corporate surety on September 28 and was thereupon released from pretrial incarceration. See App. 148.

[3] See Petition for Relief of Violations (filed July 25, 1983), *id.*, at 56 (requesting that "trial be held within the legal guidelines of the [IAD]" and asserting that the State was "forcing [him] to be tried beyond the limits

mention Article IV(c) or the September 13 trial date previously set. In contrast, on August 29, four days after the 120-day period expired, Reed presented a clear statement and citation. In a "Petition for Discharge," he alleged that Indiana had failed to try him within 120 days of his transfer to state custody, and therefore had violated Article IV(c);[4] consequently, he urged, the IAD mandated his immediate release.[5] The trial judge denied the petition, explaining:

> "Today is the first day I was aware that there was a 120 day limitation on the Detainer Act. The Court made its setting and while there has been a request for moving the trial forward, there has not been any speedy trial request filed, nor has there been anything in the nature of an objection to the trial setting, but only an urging that it be done within the guidelines that have been set out." *Id.*, at 113–114.

The morning trial was to commence, September 19, Reed filed a motion for continuance, saying he needed additional time for trial preparation. *Id.*, at 128. A newspaper article published two days earlier had listed the names of persons

---

as set forth in the [IAD]"); Petition for Revision of Pre-trial Procedure and Relief of Violations (filed Aug. 1, 1983), *id.*, at 88 (seeking dismissal of charges, referring, *inter alia*, to "the limited time left for trial within the laws"); Petition for Subpoena for Depositions upon Oral Examination, and for Production of Documentary Evidence (filed Aug. 11, 1983), *id.*, at 91 (requesting action "as soon as possible due to approaching trial date and Detainer Act time limits").

[4] *Id.*, at 94. Specifically, Reed wrote: "That petitioner is being detained contrary to Indiana law and procedure: 35–33–10–4, Article 4(c) . . . trial shall be commenced within one hundred twenty (120) days of arrival of the prisoner in the receiving state . . . ."

[5] The prosecutor, in response, pointed out that Article IV(c) permits "any necessary or reasonable continuance," and that Reed had not objected at the time the trial court set the date. *Id.*, at 113. He also expressed confusion about the effect of the 120-day rule and its relationship to the 180-day time limit prescribed by a different IAD provision. *Id.*, at 114; see n. 6, *infra*.

called for jury duty and the 1954 to 1980 time frame of Reed's alleged prior felony convictions. Concerned that the article might jeopardize the fairness of the trial, the judge offered Reed three options: (1) start the trial on schedule; (2) postpone it for one week; or (3) continue it to a late October date. Reed chose the third option, *id.*, at 134, 142, and the trial began on October 18; the jury convicted Reed of theft, and found him a habitual offender. He received a sentence of 4 years in prison on the theft conviction, and 30 years on the habitual offender conviction, the terms to run consecutively.

The Indiana Supreme Court affirmed the convictions. *Reed* v. *State*, 491 N. E. 2d 182 (1986). Concerning Reed's objection that the trial commenced after the 120-day period specified in IAD Article IV(c), the Indiana Supreme Court stressed the timing of Reed's pleas in court: Reed had vigorously urged at the August 1 pretrial conference other alleged IAD violations (particularly, his asserted right to a hearing in advance of the federal transfer to state custody), but he did not then object to the trial date. *Id.*, at 184–185; see App. 67–74. "The relevant times when [Reed] should have objected were on June 27, 1983, the date the trial was set, and August 1, 1983, the date the trial was reset," the Indiana Supreme Court concluded. 491 N. E. 2d, at 185.

Reed unsuccessfully sought postconviction relief in the Indiana courts, and then petitioned under 28 U. S. C. § 2254 for a federal writ of habeas corpus. The District Court denied the petition. Examining the record, that court concluded that "a significant amount of the delay of trial is attributable to the many motions filed . . . by [Reed] or filed on [Reed's] behalf"; delay chargeable to Reed, the court held, was excludable from the 120-day period. *Reed* v. *Clark*, Civ. No. S 90–226 (ND Ind., Sept. 21, 1990), App. 195–196.

The Court of Appeals for the Seventh Circuit affirmed. *Reed* v. *Clark*, 984 F. 2d 209 (1993). Preliminarily, the Court of Appeals recognized that the IAD, although state law, is also a "law of the United States" within the meaning of

§ 2254(a). *Id.*, at 210. Nonetheless, that court held collateral relief unavailable because Reed's IAD speedy trial arguments and remedial contentions had been considered and rejected by the Indiana courts. *Stone* v. *Powell*, 428 U. S. 465 (1976), the Court of Appeals concluded, "establishes the proper framework for evaluating claims under the IAD." 984 F. 2d, at 213. In *Stone*, this Court held that the exclusionary rule, devised to promote police respect for the Fourth Amendment rights of suspects, should not be applied on collateral review unless the state court failed to consider the defendant's arguments. We granted certiorari, 510 U. S. 963 (1993), to resolve a conflict among the Courts of Appeals on the availability of habeas review of IAD speedy trial claims.[6]

---

[6] The IAD's other speedy trial provision, Article III(a), requires that a prisoner against whom a detainer has been lodged be tried within 180 days of the prosecuting State's receipt of the prisoner's notice requesting speedy disposition of the charges. *Fex* v. *Michigan*, 507 U. S. 43 (1993).

The Seventh Circuit's rationale is one of several approaches taken by Courts of Appeals addressing the availability of habeas review for violations of Articles IV(c) and III(a). Some courts have denied relief without regard to whether the petitioner alerted the trial court to the IAD's speedy trial provisions. In this category, some decisions state that IAD speedy trial claims are never cognizable under § 2254, because IAD speedy trial violations do not constitute a "fundamental defect which inherently results in a complete miscarriage of justice," under *Hill* v. *United States*, 368 U. S. 424, 428 (1962). See, *e. g.*, *Reilly* v. *Warden, FCI Petersburg*, 947 F. 2d 43, 44–45 (CA2 1991) *(per curiam); Fasano* v. *Hall*, 615 F. 2d 555, 558–559 (CA1 1980). Other courts applying the *Hill* standard have said § 2254 is not available for failure to meet IAD speedy trial specifications unless the petitioner shows actual prejudice. See, *e. g.*, *Seymore* v. *Alabama*, 846 F. 2d 1355, 1359–1360 (CA11 1988); *Kerr* v. *Finkbeiner*, 757 F. 2d 604, 607 (CA4 1985). Still other courts have reached the merits of IAD speedy trial contentions raised in habeas actions under § 2254. See, *e. g.*, *Birdwell* v. *Skeen*, 983 F. 2d 1332 (CA5 1993) (affirming District Court's grant of the writ, where state court failed to comply with IAD Article III(a) in spite of petitioner's repeated request for compliance with the 180-day rule); *Cody* v. *Morris*, 623 F. 2d 101, 103 (CA9 1980) (remanding to District Court for resolution of factual dispute over whether habeas

## II

A state prisoner may obtain federal habeas corpus relief "only on the ground that he is in custody in violation of the Constitution or *laws* or treaties *of the United States.*" 28 U. S. C. § 2254(a) (emphasis added). Respondent Indiana initially argues that the IAD is a voluntary interstate agreement, not a "la[w] . . . of the United States" within the meaning of § 2254(a). Our precedent, however, has settled that issue: While the IAD is indeed state law, it is a law of the United States as well. See *Carchman* v. *Nash,* 473 U. S. 716, 719 (1985) (§ 2254 case, holding that the IAD "is a congressionally sanctioned interstate compact within the Compact Clause, U. S. Const., Art. I, § 10, cl. 3, and thus is a federal law subject to federal construction"); *Cuyler* v. *Adams,* 449 U. S. 433, 438–442 (1981) ("congressional consent transforms an interstate compact . . . into a law of the United States").

The Court of Appeals recognized that the IAD is both a law of Indiana and a federal statute. 984 F. 2d, at 210. Adopting *Stone* v. *Powell,* 428 U. S. 465 (1976), as its framework, however, that court held relief under § 2254 unavailable to Reed. 984 F. 2d, at 213. *Stone* holds that a federal court may not, under § 2254, consider a claim that evidence from an unconstitutional search was introduced at a state prisoner's trial if the prisoner had "an opportunity for full and fair litigation of [the] claim in the state courts." 428 U. S., at 469. Our opinion in *Stone* concentrated on "the nature and purpose of the Fourth Amendment exclusionary rule." *Id.,* at 481. The Court emphasized that its decision confined the exclusionary rule, not the scope of § 2254 generally:

petitioner had been tried within Article IV(c)'s 120-day limit); *United States ex rel. Esola* v. *Groomes,* 520 F. 2d 830, 839 (CA3 1975) (remanding to District Court for determination on whether state trial court had granted continuance for good cause pursuant to Article IV(c)).

"Our decision today is *not* concerned with the scope of the habeas corpus statute as authority for litigating constitutional claims generally. We do reaffirm that the exclusionary rule is a judicially created remedy rather than a personal constitutional right, . . . and we emphasize the minimal utility of the rule when sought to be applied to Fourth Amendment claims in a habeas corpus proceeding." *Id.*, at 495, n. 37 (emphasis in original).

We have "repeatedly declined to extend the rule in *Stone* beyond its original bounds." *Withrow* v. *Williams*, 507 U. S. 680, 687 (1993) (holding that *Stone* does not apply to a state prisoner's claim that his conviction rests on statements obtained in violation of the safeguards set out in *Miranda* v. *Arizona*, 384 U. S. 436 (1966)).[7] Because precedent already in place suffices to resolve Reed's case, we do not adopt the Seventh Circuit's *Stone*-based rationale.

We have stated that habeas review is available to check violations of federal laws when the error qualifies as "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *Hill* v. *United States*, 368 U. S. 424, 428 (1962); accord, *United States* v. *Timmreck*, 441 U. S. 780, 783 (1979); *Davis* v. *United States*, 417 U. S. 333, 346 (1974). The IAD's purpose—providing a nationally uniform means of transferring prisoners between jurisdictions—can be effectuated only by nationally uniform interpretation. See 984 F. 2d, at 214 (Ripple, J., dissenting from denial of rehearing in banc). Therefore, the argument that

---

[7] See also *Kimmelman* v. *Morrison*, 477 U. S. 365, 375–377 (1986) (*Stone* does not bar habeas review of claim of ineffective assistance of counsel based on counsel's failure to file a timely suppression motion); *Rose* v. *Mitchell*, 443 U. S. 545, 559–564 (1979) (refusing to extend *Stone* to equal protection claim of racial discrimination in selection of state grand jury foreman); *Jackson* v. *Virginia*, 443 U. S. 307, 321–324 (1979) (*Stone* does not bar habeas review of due process claim of insufficiency of evidence supporting conviction).

the compact would be undermined if a State's courts resisted steadfast enforcement, with total insulation from § 2254 review, is not without force. Cf. *Stone* v. *Powell,* 428 U. S., at 526 (Brennan, J., dissenting) (institutional constraints preclude Supreme Court from overseeing adequately whether state courts have properly applied federal law). This case, however, gives us no cause to consider whether we would confront an omission of the kind contemplated in *Hill, Timmreck,* or *Davis,* if a state court, presented with a timely request to set a trial date within the IAD's 120-day period, nonetheless refused to comply with Article IV(c).

When a defendant obscures Article IV(c)'s time prescription and avoids clear objection until the clock has run, cause for collateral review scarcely exists. An unwitting judicial slip of the kind involved here ranks with the nonconstitutional lapses we have held not cognizable in a postconviction proceeding. In *Hill,* for example, a federal prisoner sought collateral relief, under 28 U. S. C. § 2255,[8] based on the trial court's failure at sentencing to afford him an opportunity to make a statement and present information in mitigation of punishment, as required by Rule 32(a) of the Federal Rules of Criminal Procedure. The petitioner, however, had not sought to assert his Rule 32(a) rights at the time of sentencing, a point we stressed:

> "[W]e are not dealing here with a case where the defendant was affirmatively denied an opportunity to speak during the hearing at which his sentence was imposed. Nor is it suggested that in imposing the sentence the District Judge was either misinformed or uninformed as to any relevant circumstances. Indeed, there is no claim that the defendant would have had anything at all to say if he had been formally invited to speak." 368 U. S., at 429.

---

[8] The text of § 2255, in relevant part, is set out at n. 12, *infra.*

"[W]hen all that is shown is a failure to comply with the formal requirements" of Rule 32(a), we held, "collateral relief is not available." *Ibid.* But we left open the question whether "[collateral] relief would be available if a violation of Rule 32(a) occurred in the context of other aggravating circumstances." *Ibid.*

*Hill* controlled our decision in *United States* v. *Timmreck*, 441 U. S. 780 (1979), where a federal prisoner sought collateral review, under § 2255, to set aside a conviction based on a guilty plea. The complainant in *Timmreck* alleged that the judge who accepted his plea failed to inform him, in violation of Rule 11 of the Federal Rules of Criminal Procedure, that he faced a mandatory postincarceration special parole term. We rejected the collateral attack, observing that the violation of Rule 11 was technical, and did not "resul[t] in a 'complete miscarriage of justice' or in a proceeding 'inconsistent with the rudimentary demands of fair procedure.'" *Id.*, at 784, quoting *Hill*, 368 U. S., at 428. "As in *Hill*," we found it unnecessary to consider whether "[postconviction] relief would be available if a violation of Rule 11 occurred in the context of other aggravating circumstances." 441 U. S., at 784–785.

Reed's case similarly lacks "aggravating circumstances" rendering "'the need for the remedy afforded by the writ of *habeas corpus* . . . apparent.'" *Hill*, 368 U. S., at 428, quoting *Bowen* v. *Johnston*, 306 U. S. 19, 27 (1939). Reed had two clear chances to alert the trial judge in open court if he indeed wanted his trial to start on or before August 25, 1993. He let both opportunities pass by. At the pretrial hearings at which the trial date was set and rescheduled, on June 27 and August 1, Reed not only failed to mention the 120-day limit; he indicated a preference for holding the trial after his release from federal imprisonment, which was due to occur after the 120 days expired. See *supra*, at 342. Then, on the *124th day*, when it was no longer possible to meet Article

IV(c)'s deadline, Reed produced his meticulously precise "Petition for Discharge." See *supra*, at 344, and n. 4.[9]

As the Court of Appeals observed, had Reed objected to the trial date on June 27 or August 1 "instead of burying his demand in a flood of other documents, the [trial] court could have complied with the IAD's requirements." 984 F. 2d, at 209–210. The Court of Appeals further elaborated:

> "During the pretrial conference of August 1, 1983, Reed presented several arguments based on the IAD, including claims that the federal government should have held a hearing before turning him over to the state and that his treatment in Indiana fell short of the state's obligations under Art. V(d) and (h). Reed did not mention the fact that the date set for trial would fall outside the 120 days allowed by Art. IV(c). Courts often require litigants to flag important issues orally rather than bury vital (and easily addressed) problems in reams of paper, as Reed did. E. g., Fed. R. Crim. P. 30 (requiring a distinct objection to jury instructions); cf. Fed. R. Crim. P. 12(b) (a district judge may require motions to be made orally). It would not have been difficult for the judge to advance the date of the trial or make a finding on the record of good cause, either of which would have satisfied Art. IV(c). Because the subject never came up, however, the trial judge overlooked the problem." *Id.*, at 213.

Reed regards the Court of Appeals' description of his litigation conduct, even if true, as irrelevant. He maintains

---

[9] In contrast, the defendant in *United States* v. *Ford*, 550 F. 2d 732 (CA2 1977), aff'd *sub nom. United States* v. *Mauro*, 436 U. S. 340 (1978), made "[timely and] vigorous protests," to several Government-requested continuances, yet was tried 13 months after Article IV(c)'s 120-day period expired. 550 F. 2d, at 735. Reed's trial occurred within two months of the period's expiration. See *infra*, at 353.

that the IAD dictates the result we must reach, for Article V(c) directs dismissal with prejudice when Article IV(c)'s time limit has passed.[10]  Article V(c) instructs only that "the appropriate court of the jurisdiction where the indictment . . . has been pending"—*i. e.*, the original trial court—shall dismiss the charges if trial does not commence within the time Article IV(c) prescribes.  Article V(c) does not address the discrete question whether relief for violations of the IAD's speedy trial provisions is available on collateral review.  That matter is governed instead by the principles and precedent generally controlling availability of the great writ.  See *id.*, at 212.  Referring to those guides, and particularly the *Hill* and *Timmreck* decisions, we conclude that a state court's failure to observe the 120-day rule of IAD Article IV(c) is not cognizable under § 2254 when the defendant registered no objection to the trial date at the time it was set, and suffered no prejudice attributable to the delayed commencement.

### III

Reed argues that he is entitled to habeas relief because the IAD's speedy trial provision "effectuates a constitutional right," the Sixth Amendment guarantee of a speedy trial. Brief for Petitioner 26.  Accordingly, he maintains, the alleged IAD violation should be treated as a constitutional violation or as a "fundamental defect" satisfying the *Hill* standard, not as a mere technical error.  Reed's argument is insubstantial for, as he concedes, his constitutional right to a speedy trial was in no way violated.  See Tr. of Oral Arg. 7.

---

[10] Article V(c) provides in relevant part:

"[I]n the event that an action on the indictment, information, or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in article III or article IV hereof, the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect."

Reed's trial commenced 54 days after the 120-day period expired. He does not suggest that his ability to present a defense was prejudiced by the delay. Nor could he plausibly make such a claim.[11] Indeed, asserting a need for more time to prepare for a trial that would be "fair and meaningful," App. 128, Reed himself *requested* a delay beyond the scheduled September 19 opening. A showing of prejudice is required to establish a violation of the Sixth Amendment Speedy Trial Clause, and that necessary ingredient is entirely missing here. See *Barker* v. *Wingo*, 407 U. S. 514, 530 (1972) (four factors figure in the determination of Sixth Amendment speedy trial claims; one of the four is "prejudice to the defendant").

## IV

More strenuously, Reed argues that *Hill* and similar decisions establish a standard for *federal* prisoners seeking relief under 28 U. S. C. § 2255,[12] not for *state* prisoners seeking relief under § 2254. But it is scarcely doubted that, at least where mere statutory violations are at issue, "§ 2255 was intended to mirror § 2254 in operative effect." *Davis* v. *United States*, 417 U. S. 333, 344 (1974). Far from suggesting that the *Hill* standard is inapplicable to § 2254 cases, our decisions assume that *Hill* controls collateral review—under both §§ 2254 and 2255—when a federal statute, but not the

---

[11] As the Court of Appeals noted:

"Had Indiana put Reed to trial within 120 days of his transfer from federal prison, everything would have proceeded as it did. Reed does not contend that vital evidence fell into the prosecutor's hands (or slipped through his own fingers) between August 26 and September 19, 1983." 984 F. 2d, at 212.

[12] Section 2255 provides in pertinent part:

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."

Constitution, is the basis for the postconviction attack. For example, in *Stone* v. *Powell*, a § 2254 case, we recalled "the established rule with respect to nonconstitutional claims" as follows: "[N]onconstitutional claims . . . can be raised on collateral review only if the alleged error constituted a ' "fundamental defect which inherently results in a complete miscarriage of justice." ' " 428 U. S., at 477, n. 10, quoting *Davis*, 417 U. S., at 346, quoting *Hill*, 368 U. S., at 428.[13]

Reed nevertheless suggests that we invoked the fundamental defect standard in *Hill* and *Timmreck* for this sole reason: "*So far as convictions obtained in the federal courts are concerned*, the general rule is that the writ of *habeas corpus* will not be allowed to do service for an appeal." *Sunal* v. *Large*, 332 U. S. 174, 178 (1947) (emphasis added). The same "general rule," however, applies to § 2254. Where the petitioner—whether a state or federal prisoner—failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes "cause" for the waiver and shows "actual prejudice resulting from the alleged . . . violation." *Wainwright* v. *Sykes*, 433 U. S. 72, 84 (1977); *id.*, at 87.

We see no reason to afford habeas review to a state prisoner like Reed, who let a time clock run without alerting the trial court, yet deny collateral review to a federal prisoner similarly situated. See *Francis* v. *Henderson*, 425 U. S. 536, 542 (1976) (" 'Plainly the interest in finality is the same with regard to both federal and state prisoners. . . . There is no

---

[13] See also *United States* v. *Addonizio*, 442 U. S. 178 (1979), in which we reiterated that the *Hill* standard governs habeas review of all claims of federal statutory error, citing *Stone:*

"[U]nless the claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained far more limited. *Stone* v. *Powell*, 428 U. S. 465, 477, n. 10. The Court has held that an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.' " 442 U. S., at 185, quoting *Hill*, 368 U. S., at 428.

reason to . . . give greater preclusive effect to procedural defaults by federal defendants than to similar defaults by state defendants.'") (quoting *Kaufman* v. *United States*, 394 U. S. 217, 228 (1969)); see also *United States* v. *Frady*, 456 U. S. 152, 167–168 (1982) (collateral review of procedurally defaulted claims is subject to same "cause and actual prejudice" standard, whether the claim is brought by a state prisoner under § 2254 or a federal prisoner under § 2255).

Reed contends that the scope of review should be broader under § 2254 than under § 2255, because state prisoners, unlike their federal counterparts, have "had no meaningful opportunity to have a federal court consider any federal claim." Brief for Petitioner 34. But concern that state courts might be hostile to the federal law here at stake is muted by two considerations. First, we have reserved the question whether federal habeas review is available to check violations of the IAD's speedy trial prescriptions when the state court disregards timely pleas for their application. See *supra*, at 349. Second, the IAD is both federal law and the law of Indiana. Ind. Code § 35–33–10–4 (1993). As the Court of Appeals noted: "We have no more reason to suppose that the Supreme Court of Indiana seeks to undermine the IAD than we have to suppose that it seeks to undermine any other law of Indiana." 984 F. 2d, at 211.

\* \* \*

For the reasons stated, the judgment of the Court of Appeals is

*Affirmed.*

JUSTICE SCALIA, with whom JUSTICE THOMAS joins, concurring in part and concurring in the judgment.

I join all the Court's opinion except Part II, and the last paragraph of Part IV (which incorporates some of the analysis of Part II). I thus agree that the "fundamental defect" test of *Hill* v. *United States*, 368 U. S. 424, 428 (1962), is the

appropriate standard for evaluating alleged statutory violations under both §§ 2254 and 2255, see *ante*, at 352–354, but I disagree with what seems to me (in Part II) too parsimonious an application of that standard.

I

This Court has long applied equitable limitations to narrow the broad sweep of federal habeas jurisdiction. See *Withrow* v. *Williams*, 507 U. S. 680, 715–721 (1993) (SCALIA, J., concurring in part and dissenting in part). One class of those limitations consists of substantive restrictions upon the type of claim that will be entertained. *Hill*, for example, holds that the claim of a federal statutory violation will not be reviewed unless it alleges "a fundamental defect which inherently results in a complete miscarriage of justice [o]r an omission inconsistent with the rudimentary demands of fair procedure." 368 U. S., at 428. Most statutory violations, at least when they do not occur "in the context of other aggravating circumstances," are simply not important enough to invoke the extraordinary habeas jurisdiction. *Id.*, at 429. See also *United States* v. *Timmreck*, 441 U. S. 780, 783–785 (1979).

Although JUSTICE GINSBURG concludes that an unobjected-to violation of the Interstate Agreement on Detainers Act (IAD), 18 U. S. C. App. § 2, is not "'a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure,'" she declines to decide whether that judgment would be altered "if a state court, presented with a timely request to set a trial date within the IAD's 120-day period, nonetheless refused to comply with Article IV(c)," *ante*, at 348, 349. To avoid the latter question, she conducts an analysis of how petitioner waived his IAD rights. See *ante*, at 350–351. The issue thus avoided is not a constitutional one, and the avoiding of it (when the answer is so obvious) may invite a misunderstanding of the *Hill* test.

The class of procedural rights that are *not* guaranteed by the Constitution (which includes the Due Process Clauses), but that nonetheless *are* inherently necessary to avoid "a complete miscarriage of justice," or numbered among "the rudimentary demands of fair procedure," is no doubt a small one, if it is indeed not a null set. The guarantee of trial within 120 days of interjurisdictional transfer unless good cause is shown—a provision with no application to prisoners involved with only a single jurisdiction or incarcerated in one of the two States that do not participate in the voluntary IAD compact—simply cannot be among that select class of statutory rights.

As for *Hill* and *Timmreck's* reservation of the question whether habeas would be available "in the context of other aggravating circumstances," that seems to me clearly a reference to circumstances *that cause additional prejudice to the defendant*, thereby elevating the error to a fundamental defect or a denial of rudimentary procedural requirements— *not* a reference to circumstances that make the trial judge's behavior more willful or egregious. I thus think it wrong to suggest that if only petitioner had not waived his IAD speedy trial rights by failing to assert them in a timely fashion, "aggravating circumstances" might exist. See *ante*, at 349, 350–351. That says, in effect, that "aggravating circumstances" which can entitle a mere statutory violation to habeas review may consist of the mere fact that the statutory violation *was not waived*. Surely that sucks the life out of *Hill*.* Nor do I accept JUSTICE GINSBURG's suggestion that an interest in uniform interpretation of the IAD might

---

*Many courts, including the Indiana Supreme Court in evaluating this petitioner's claim, see *Reed* v. *State*, 491 N. E. 2d 182, 185 (Ind. 1986), have held that a prisoner's waiver of the 120-day limit will prevent violation of the IAD, or will preclude the remedy of dismissal with prejudice. See, *e. g., United States* v. *Odom*, 674 F. 2d 228 (CA4 1982). Perhaps, therefore, JUSTICE GINSBURG's effort to decide the jurisdictional issue on as narrow a ground as possible has caused her to decide the merits.

counsel in favor of habeas review in a nonwaiver situation. See *ante*, at 348–349. I see no reason why this Court's direct review of state and federal decisions will not suffice for that purpose, as it does in most other contexts. Cf. *Cuyler* v. *Adams*, 449 U. S. 433, 442 (1981). More importantly, however, federal habeas jurisdiction was not created with the intent, nor should we seek to give it the effect, of altering the fundamental disposition that *this Court*, and not individual federal district judges, has appellate jurisdiction, as to federal questions, over the supreme courts of the States.

If there was ever a technical rule, the IAD's 120-day limit is one. I think we produce confusion by declining to state the obvious: that violation of that technicality, intentional or unintentional, neither produces nor is analogous to (1) lack of jurisdiction of the convicting court, (2) constitutional violation, or (3) miscarriage of justice or denial of rudimentary procedures. It is no basis for federal habeas relief.

## II

In addition to substantive limitations on the equitable exercise of habeas jurisdiction, the Court has imposed procedural restrictions. For example, a habeas claim cognizable under § 2255 (the correlative of § 2254 for federal prisoners), such as a constitutional claim, will not be heard if it was procedurally defaulted below, absent a showing of cause and actual prejudice. See *United States* v. *Frady*, 456 U. S. 152, 167–168 (1982). And claims will ordinarily not be entertained under § 2255 that have already been rejected on direct review. See *Kaufman* v. *United States*, 394 U. S. 217, 227, n. 8 (1969); see also *Withrow*, 507 U. S., at 720–721 (SCALIA, J., concurring in part and dissenting in part) (collecting cases showing that lower courts have uniformly followed the *Kaufman* dictum). Together, these two rules mean that "a prior opportunity for full and fair litigation is normally dispositive of a federal prisoner's habeas claim." 507 U. S., at 721.

Although this procedural limitation has not been raised as a defense in the present case, I note my view that, at least where mere statutory violations are at issue, a prior opportunity for full and fair litigation precludes a state-prisoner petition no less than a federal-prisoner petition. As the Court today reaffirms, "'§ 2255 was intended to mirror § 2254 in operative effect.'" *Ante*, at 353, quoting *Davis* v. *United States*, 417 U. S. 333, 344 (1974). Cf. *Frady, supra*, at 166. Otherwise a prisoner, like petitioner, transferred from federal to state prison under the IAD would have three chances to raise his claim (state direct, state habeas, and § 2254) while a prisoner transferred from state to federal prison under the IAD would have only one. Since the present petitioner raised his IAD claim on direct appeal in the Indiana courts and on state habeas review, his federal habeas claim could have been rejected on the ground that the writ ordinarily will not be used to readjudicate fully litigated statutory claims.

JUSTICE BLACKMUN, with whom JUSTICE STEVENS, JUSTICE KENNEDY, and JUSTICE SOUTER join, dissenting.

The federal habeas corpus statute allows a state prisoner to challenge his conviction on the ground that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U. S. C. § 2254(a). The Court acknowledges, as it must, that the Interstate Agreement on Detainers (IAD) is a "la[w] . . . of the United States" under this statute. See *Carchman* v. *Nash*, 473 U. S. 716, 719 (1985); *Cuyler* v. *Adams*, 449 U. S. 433, 438–442 (1981). In addition, respondents concede that a defendant tried in clear violation of the IAD's 120-day limit would be held in custody in violation of a law of the United States. Tr. of Oral Arg. 37. Nevertheless, the Court appears to conclude that a violation of the IAD is simply not serious enough to warrant collateral relief, at least where the defendant fails to invoke

his IAD rights according to the precise rules the Court announces for the first time today.

The Court purports to resolve this case by relying on "precedent already in place," *ante*, at 348, referring to "principles and precedent generally controlling availability of the great writ," *ante*, at 352. Our precedent, on its face, does not reach nearly so far, and its extension to this case is unwarranted under general habeas corpus principles. Most seriously, the Court disregards Congress' unambiguous judgment about the severity of, and the necessary remedy for, a violation of the IAD time limits. I respectfully dissent.

I

The Court purports to resolve this issue by relying on the *Hill-Timmreck* line of cases. See *Hill* v. *United States*, 368 U. S. 424 (1962); *Davis* v. *United States*, 417 U. S. 333 (1974); *United States* v. *Timmreck*, 441 U. S. 780 (1979); see also *Sunal* v. *Large*, 332 U. S. 174 (1947); *United States* v. *Frady*, 456 U. S. 152 (1982). Despite the professed narrowness of the Court's ultimate holding, however, its decision reflects certain assumptions about the nature of habeas review of state court judgments that do not withstand close analysis. Each of the cases relied on by the majority—*Hill, Timmreck,* and *Davis*—concerned a *federal* prisoner's request under 28 U. S. C. § 2255 for collateral relief from alleged defects in his federal trial. Before today, this Court never had applied those precedents to bar review of a § 2254 petition.[1] It does so now without a full discussion of, or appreciation for, the different policy concerns that should shape the exercise of federal courts' discretion in § 2254 cases.

---

[1] The majority notes, *ante*, at 354, that the Court cited *Hill* in *Stone* v. *Powell*, 428 U. S. 465, 477, n. 10 (1976), a § 2254 case. The decision in that case, however, rested not on *Hill*, but on considerations unique to the exclusionary rule.

## A

While there are stray remarks in our opinions suggesting that this Court has treated §§ 2254 and 2255 as equivalents,[2] there are other indications to the contrary, see, *e. g., Withrow* v. *Williams,* 507 U. S. 680, 715 (1993) (SCALIA, J., concurring in part and dissenting in part). In any event, there are sound reasons to refrain from treating the two as identical. Primary among them is the importance under § 2254 of providing a federal forum for review of state prisoners' federal claims, not only in order to ensure the enforcement of federal rights, but also to promote uniformity in the state courts' interpretation and application of federal law.[3]

We recognized in *United States* v. *Frady,* 456 U. S., at 166, that the "federal prisoner . . . , unlike his state counterparts, has already had an opportunity to present his federal claims in federal trial and appellate forums." For the federal pris-

---

[2] The Court relies, for instance, on the remark in *Davis* that " '§ 2255 was intended to mirror § 2254 in operative effect.'" *Ante,* at 353, quoting *Davis* v. *United States,* 417 U. S. 333, 344 (1974). That statement, however, did no more than parry the suggestion that federal prisoners, unlike state prisoners, were restricted to bringing claims "of constitutional dimension," and not those grounded in statutes. *Ibid.* The *Davis* Court was addressing only the threshold statutory basis for relief—specifically whether relief was available to federal prisoners for violations of "laws" of the United States. It said nothing about the equitable considerations that might guide the Court's exercise of its discretion to grant or deny relief. In other words, *Davis* concerned jurisdictional, not prudential, limits on habeas review. See *Withrow* v. *Williams,* 507 U. S. 680, 716 (1993) (SCALIA, J., concurring in part and dissenting in part) (the "sweeping" breadth of habeas jurisdiction is "tempered by the restraints that accompany the exercise of equitable discretion").

[3] As a practical matter, this Court's direct review of state court decisions cannot adequately ensure uniformity. See *id.,* at 721, n. (SCALIA, J., concurring in part and dissenting in part) ("Of course a federal forum is theoretically available in this Court, by writ of certiorari. Quite obviously, however, this mode of review cannot be generally applied due to practical limitations") (citation omitted).

oner claiming statutory violations, habeas courts serve less to guarantee uniformity of federal law or to satisfy a threshold need for a federal forum than to provide a backstop to catch and correct certain nonconstitutional errors that evaded the trial and appellate courts.[4]   Thus, this Court has determined that "where the trial or appellate court has had a 'say' on a federal prisoner's claim, it may be open to the § 2255 court to determine that . . . 'the prisoner is entitled to no relief.'" *Kaufman* v. *United States*, 394 U. S. 217, 227, n. 8 (1969) (citation omitted).   Under *Hill* and *Timmreck*, relief may be limited to the correction of "fundamental defect[s]" or "omission[s] inconsistent with the rudimentary demands of fair procedure." *Hill*, 368 U. S., at 428.   The *Hill* principle, in short, is that where the error is not egregious, the habeas court need not cover the ground already covered by other federal courts.

For the state prisoner, by contrast, a primary purpose of § 2254 is to provide a federal forum to review a state prisoner's claimed violations of federal law, claims that were, of necessity, addressed to the state courts.   See *Brown* v. *Allen*, 344 U. S. 443, 508 (1953) (opinion of Frankfurter, J.) (§ 2254 collateral review is necessary to permit a federal court to have the "last say" with respect to questions of federal law); *Vasquez* v. *Hillery*, 474 U. S. 254 (1986) (requiring exhaustion of federal claims in state courts).   Thus, § 2254 motions anticipate that the federal court will undertake an independent review of the work of the state courts, even where the federal claim was fully and fairly litigated. *Wright* v. *West*, 505 U. S. 277 (1992) (O'CONNOR, J., concurring in judgment) (affirming that a state court's determina-

---

[4] In fact, § 2255 requires a prisoner to file his motion in the court that imposed his sentence as a further step in his criminal case, not as a separate civil action.   Advisory Committee's Note on Habeas Corpus Rule 1, 28 U. S. C., p. 416 (governing § 2255 proceedings).

tion of federal law and of mixed questions of federal law and fact are entitled to *de novo* review by federal habeas court).[5] Even if we recognize valid reasons for limiting this review to claims of serious or substantial error, where no federal court previously has addressed the § 2254 petitioner's federal claims, there is less reason to sift these claims through so fine a screen as *Hill* and *Timmreck* provide.

Similarly, prudential justifications for *Hill*'s "fundamental error" standard may differ from state to federal proceedings. In a federal trial and appeal, virtually any procedural error, however minor, will violate a "law" of the United States. In this context, it is both impracticable and unnecessary to allow collateral review of all claims of error, particularly since the defendant has had the opportunity both to raise them in and to appeal them to a federal forum. It is hardly surprising, therefore, that the *Hill-Timmreck* screening device, which sorts the substantial errors from the mere technical violations, was developed in § 2255. A state trial, by contrast, implicates few federal laws outside the Constitution. On the extraordinary occasions when Congress does consider a federal law to be so important as to warrant its application in state proceedings, this alone counsels an approach other

---

[5] JUSTICE SCALIA proposes to foreclose § 2254 review of federal nonconstitutional claims where the state prisoner was afforded a full and fair opportunity to litigate those claims in state court. This proposal fails for obvious reasons. To hold that full and fair litigation in state courts is a substitute for a federal forum would be, to borrow a phrase, to "suc[k] the life out of [§ 2254]." See *ante*, at 357 (concurring opinion). At the heart of § 2254 is federal court review of state court decisions on federal law. With one notable exception, see *Stone* v. *Powell*, 428 U. S. 465, 486–496 (1976), this Court uniformly has rejected a "full and fair opportunity to litigate" as a bar to § 2254 review. See *Withrow* v. *Williams, supra; Kimmelman* v. *Morrison*, 477 U. S. 365 (1986); *Rose* v. *Mitchell*, 443 U. S. 545 (1979); *Jackson* v. *Virginia*, 443 U. S. 307 (1979); see also *Wright* v. *West*, 505 U. S. 277, 299 (1992) (O'CONNOR, J., concurring in judgment) (disputing that a "full and fair hearing in the state courts" required deferential review in habeas).

than *Hill-Timmreck* to determine whether a violation of that law warrants federal court review and enforcement.[6]

The difference in the roles that federal statutes play in state and federal criminal proceedings points to another danger attendant to the uncritical application of the *Hill* standard in § 2254. *Hill* has been read to disfavor habeas review of federal statutory violations as a class. See, *e. g., ante,* at 356 (concurring opinion) (reading *Hill* for the proposition that "[m]ost statutory violations . . . are simply not important enough to invoke the extraordinary habeas jurisdiction"). This distinction between statutory and constitutional violations, exaggerated even in the context of § 2255,[7] has even less justification under § 2254.

---

[6] There is an additional reason to question the application of the *Hill-Timmreck* "fundamental error" or "miscarriage of justice" standard to Reed's § 2254 claim. In both *Hill* and *Timmreck*, a federal prisoner bypassed an available federal appeal, and this Court endorsed the rule of *Sunal v. Large,* 332 U. S. 174, 178 (1947), that collateral attack cannot "do service for an appeal." See *Hill,* 368 U. S., at 428–429 (finding "apposite" the reasoning in *Sunal,* 332 U. S., at 178, that "'[w]ise judicial administration of the federal courts'" counseled against permitting a collateral attack to supplant appeals); *Timmreck,* 441 U. S., at 784 (seeing "no basis here for allowing collateral attack 'to do service for an appeal'") (quoting *Sunal,* 332 U. S., at 178); see also *Hill,* 368 U. S., at 428–429 (noting that Congress "'provided a regular, orderly method for correction'" of errors by "'granting an appeal to the Circuit Court of Appeals and by vesting us with certiorari jurisdiction'" and that if defendants were permitted to bypass this orderly method, "'[e]rror which was not deemed sufficiently adequate to warrant an appeal would acquire new implications'") (quoting *Sunal,* 332 U. S., at 181–182). Thus, this standard appears to have been based in part on principles of default. Our habeas jurisprudence subsequently has imposed a procedural default bar in § 2254 cases, *Wainwright v. Sykes,* 433 U. S. 72, 84, 87 (1977), and that bar was not applied to Reed.

[7] *Hill* and *Timmreck* can be read for the proposition that at least *some* nonconstitutional violations "are simply not important enough" to warrant habeas relief. In *Hill,* for example, a federal prisoner who did not appeal his conviction was not permitted to obtain collateral relief based on the sentencing court's "failure to comply with the formal requirements" of

The language of § 2254 itself permits a state prisoner to seek relief for a violation "of the Constitution or laws or treaties of the United States." By its own terms, then, § 2254 applies equally to claims of statutory or constitutional violations. When construing the similar language of Rev. Stat. § 1979, 42 U. S. C. § 1983, which permits civil actions against state actors for "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States, we concluded that "the phrase 'and laws,' as used in § 1983, means what it says." *Maine* v. *Thiboutot*, 448 U. S.

---

Federal Rule of Criminal Procedure 32(a), which commands that every defendant be allowed to make a statement before he is sentenced. 368 U. S., at 429. Similarly, in *Timmreck*, the Court held that a federal prisoner who did not appeal the validity of his guilty plea could not obtain collateral relief under § 2255 for technical violation of Federal Rule of Criminal Procedure 11, which requires the court to ask a defendant represented by an attorney whether he wishes to say anything on his own behalf. 441 U. S., at 784.

These cases could also be read narrowly as relying on the habeas petitioner's default on direct review, see n. 6, *supra*, or as encompassing only violations of procedural rules. But even if read to establish a line between "important" and "merely technical" violations, this line is not identical to the line between statutory and constitutional violations. We made this point clear in *Davis* v. *United States*, 417 U. S., at 345–346:

"[T]here is no support in the prior holdings of this Court for the proposition that a claim is not cognizable under § 2255 merely because it is grounded in the 'laws of the United States' rather than the Constitution. It is true, of course, that in *Sunal* v. *Large*, 332 U. S. 174 (1947), the Court held that the nonconstitutional claim in that case could not be asserted to set aside a conviction on collateral attack. But *Sunal* was merely an example of 'the general rule . . . that the writ of *habeas corpus* will not be allowed to do service for an appeal.' . . . Thus, *Sunal* cannot be read to stand for the broad proposition that nonconstitutional claims can never be asserted in collateral attacks upon criminal convictions. Rather, the implication would seem to be that, absent the particular considerations regarded as dispositive in that case, the fact that a contention is grounded not in the Constitution, but in the 'laws of the United States' would not preclude its assertion in a § 2255 proceeding."

1, 4 (1980) (refusing to construe "and laws" as limited to civil rights or equal protection laws); *Hague* v. *CIO*, 307 U. S. 496, 525–526 (1939) (§ 1983 "include[s] rights, privileges and immunities secured by the laws of the United States as well as by the Constitution").   Section 1983 was enacted contemporaneously with § 2254, and it shares the common purpose of making the federal courts available for the uniform interpretation and enforcement of federal rights in state settings. There is no reason to read § 1983 as placing statutes on a par with the Constitution, but to read § 2254 as largely indifferent to violations of statutes.

Moreover, at least until today, this Court never had held that a properly preserved claim of a violation of a federal statute should be treated differently in a § 2254 proceeding from a claim of a violation of the Constitution.   Nor is there any reason to do so.   Congress' decision to apply a federal statute to state criminal proceedings, which ordinarily are the exclusive province of state legislatures, generally should be read to reflect the congressional determination that important national interests are at stake.   Where Congress has made this determination, the federal courts should be open to ensure the uniform enforcement and interpretation of these interests.

It should be clear, then, that the distinction drawn in § 2255 between fundamental errors and "omission[s] of the kind contemplated in *Hill, Timmreck,* or *Davis,*" *ante,* at 349, simply does not support a distinction in § 2254 between constitutional and statutory violations.

## II

Even putting aside any misgivings about the general extension of *Hill* to § 2254 proceedings, there is a specific, and I believe insurmountable, obstacle to applying this standard to violations of the IAD.   In concluding that an "unwitting judicial slip of the kind involved here ranks with the nonconstitutional lapses we have held not cognizable," *ante,* at 349,

in *Hill* and *Timmreck,* the majority overlooks Congress' own determination about the seriousness of such a "slip" and its consequences.

Congress spoke with unmistakable clarity when it prescribed both the time limits for trying a prisoner whose custody was obtained under the IAD and the remedy for a violation of those limits. Article IV(c) of the IAD provides that the trial of a transferred prisoner "shall be commenced within one hundred and twenty days" of his arrival in the receiving jurisdiction.[8] The IAD is equally clear about the consequences of a failure to bring a defendant to trial within the prescribed time limits. Article V(c) states:

> "[I]n the event that an action on the indictment, information, or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in article III or article IV hereof, the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect."

Quite simply, Congress has determined that a receiving State must try the defendant within 120 days or not at all. This determination undermines the majority's approach for two reasons.

---

[8] This command is subject to only two qualifications. First, Article IV(c) itself provides that "for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." Second, Article VI(a) provides: "In determining the duration and expiration dates of the time periods provided in articles III and IV of this agreement, the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter." The majority relies on neither qualification, nor did the Indiana state courts.

First, the congressional imposition of the drastic sanction of dismissal forecloses any argument that a violation of the IAD time limits is somehow a mere "technical" violation too trivial to warrant habeas review. The dismissal with prejudice of criminal charges is a remedy rarely seen in criminal law, even for constitutional violations. See, *e. g., Barker* v. *Wingo*, 407 U. S. 514 (1972) (violation of Sixth Amendment speedy trial right); *Oregon* v. *Kennedy*, 456 U. S. 667 (1982) (violation of Double Jeopardy Clause). In fact, there are countless constitutional violations for which habeas review is allowed, but dismissal is not required. However this Court might have assessed the "fundamentality" of a violation of the IAD time limits in the absence of this sanction, this congressional directive does not leave us free to determine that violating the IAD time limits is no more serious than failure to comply with the technical requirements of Federal Rule of Criminal Procedure 11, *United States* v. *Timmreck*, 441 U. S. 780 (1979), or the formal requirements of Federal Rule of Criminal Procedure 32(a), *Hill*, 368 U. S., at 428.

Surely, a violation that Congress found troubling enough to warrant the severe remedy of dismissal cannot become trivial simply because the defendant did not utter what this Court later determines to be the magic words at the magic moment, particularly in the absence of any congressional requirement that the defendant either invoke his right to a timely trial or object to the setting of an untimely trial date. In the absence of any suggestion that Reed procedurally defaulted on his IAD claim so as to deprive him of relief on direct review, it is curious, to say the least, to deny habeas relief based largely on a sort of "quasi-default" standard. Such a two-tiered "default" standard is unwarranted, and to my knowledge, unprecedented.[9] Cf. *Davis* v. *United States*,

---

[9] *Sunal, Hill,* and *Timmreck*, in which the defendant took no appeal from a federal conviction, provide no support for this quasi-waiver standard. None of these cases presents a situation in which the defendant's

411 U. S. 233, 239, n. 6 (1973) (finding it "difficult to conceptualize the application of one waiver rule for purposes of federal appeal and another for purposes of federal habeas corpus").

Second, Congress' clear mandate of the remedy of dismissal can be read to constrain this Court's equitable or supervisory powers to determine an appropriate remedy, either on direct review or on habeas.[10]  Nothing in our case law even suggests that, where Congress has mandated a remedy for the violation of a federal law, a habeas court is free to cast about for a different remedy.  The remedy prescribed by the statute must be the remedy that "law and justice require."  28 U. S. C. § 2243.  In other words, the prerogative writ of habeas corpus should be exercised in accord with an express legislative command.  See IAD, Art. IX, § 5 (directing "[a]ll courts . . . of the United States . . . to enforce the agreement on detainers and to cooperate . . . with all party States in enforcing the agreement and effectuating its purpose").  At the very least, the drastic remedy of dismissal saves the IAD from falling below the *Hill* fundamentality line.

---

conduct was sufficient to present and preserve an issue for appeal, but was found somehow wanting for habeas purposes.

[10] *McCarthy* v. *United States*, 394 U. S. 459, 464, 468–472 (1969), and *Timmreck*, 441 U. S., at 784, are not to the contrary.  In *McCarthy*, the Court looked to the language and purposes of Federal Rule of Criminal Procedure 11 and to the lower courts' varying responses to noncompliance before requiring, as an exercise of the Court's supervisory powers, relief for Rule 11 violations raised on direct review.  In *Timmreck*, the Court denied relief on collateral review for a comparable Rule 11 violation, in part because, under *McCarthy*, the defendant could have challenged it on direct appeal, but did not.  In these cases, of course, the remedy for a violation was left to the Court.  In requiring relief on direct review, but not on habeas, the Court was at most differing with itself.  It was not disregarding a congressional directive.

In sum, under a faithful reading of the IAD, the state trial court was required to dismiss with prejudice all charges against Reed because his trial did not commence within 120 days of his transfer to Indiana state custody. Faced with the state courts' failure to impose this remedy, the federal habeas court should have done so.

## III

A final word is in order about the Court's emphasis on Reed's conduct and its suggestion that relief might be in order if only Reed had objected at the "relevant" moments. Under one reading of the majority opinion, the Court concludes that Reed's failure to make oral objections at the pretrial hearings somehow mitigates the seriousness of the failure to bring him to trial within the IAD time limits. In other words, the majority suggests that it is the "unobjected-to" nature of the violation, *ante*, at 356 (concurring opinion), that reduces it to the level of a *Hill-Timmreck* error, one with which the habeas court should not concern itself. But as already explained, the statute itself does not permit this Court to denigrate the significance of the violation.

It is also possible, however, to read the majority opinion as relying on a theory of waiver or procedural default. This theory is equally untenable, particularly when due consideration is given not only to the language of the IAD, but also to Reed's repeated attempts to invoke its protections. The IAD itself does not require dismissal for a violation of its 120-day limit only "upon motion of the defendant," much less "upon defendant's timely oral objection to the setting of the trial date." Instead, the statute unambiguously directs courts to dismiss charges when the time limits are breached. This arguably puts the responsibility on courts and States to police the applicable time limits. This is a reasonable choice for Congress to make. Judges and prosecutors are players who can be expected to know the IAD's straightforward re-

quirements and to make a simple time calculation at the outset of the proceedings against a transferred defendant.

Indeed, in this case, the trial court and prosecutor both had constructive notice of the IAD time limits. The Fulton County Circuit Court signed and certified that the request for temporary custody was transmitted "for action in accordance with its terms *and the provisions of the Agreement on Detainers.*" App. 5–6 (emphasis added). The State's request stated: "I propose to bring this person to trial on this [information] within the time period specified in Article IV(c) of the [IAD]." *Id.*, at 5.

Even assuming, however, that a defendant must invoke the IAD's time limits in order to obtain its protections, Reed clearly did so here. In *United States* v. *Mauro*, 436 U. S. 340 (1978), this Court agreed that the defendant's "failure to invoke the [IAD] *in specific terms* in his speedy trial motions before the District Court did not result in a waiver" of his claim that the Government violated the IAD. *Id.*, at 364 (emphasis added). We concluded, instead, that the prosecution and the court were "on notice of the substance" of an inmate's IAD claims when he "persistently requested that he be given a speedy trial" and "sought the dismissal of his indictment on the ground that the delay in bringing him to trial while the detainer remained lodged against him was causing him to be denied certain privileges at the state prison." *Id.*, at 364, 365. Reed did no less.

On May 9, 1983, at his first appearance before the court, Reed, appearing without counsel, informed the court that he would be in a halfway house but for the detainer. App. 12. The court acknowledged that there is a "world of difference" between a halfway house and the Fulton County jail. *Id.*, at 14. The court later observed that Reed's incarceration rendered him incapable of preparing his defense. *Id.*, at 54.

At the June 27 pretrial conference, Reed asked the court if it would prefer future motions orally or in writing. The court responded, "I want it in writing," and "I read better

than I listen." *Id.*, at 39–40; see also *id.*, at 123 (noting preference for written motions). Conforming to this request, Reed filed a motion on July 25, requesting that "trial be held within the legal guidelines of the Agreement on Detainer Act." *Id.*, at 56. Clarifying his concerns, Reed complained that the State of Indiana was "forcing [him] to be tried beyond the limits as set forth in the Agreement on Detainer Act," and specifically "request[ed that] no extension of time be granted beyond those guidelines." *Ibid.* This *pro se* motion was filed 31 days before the 120-day period expired.

Three days later, Reed filed a motion stating that there was "limited time left for trial within the laws." *Id.*, at 88. This *pro se* motion was filed 28 days before the IAD clock ran out. Finally, on August 11, he filed a motion for subpoenas that sought prompt relief because the "Detainer Act time limits" were "approaching." *Id.*, at 91. This *pro se* motion was filed 15 days before the 120-day IAD time limit expired.

Thus, after being instructed that the court wanted all motions in writing, Reed filed three timely written motions indicating his desire to be tried within the IAD time limits. The Supreme Court of Indiana concluded that Reed's July 26 motion constituted "a general demand that trial be held within the time limits of the IAD." 491 N. E. 2d 182, 185 (1993). Under *Mauro*, this was enough to put the court on notice of his demands. Even as an original matter, when a trial court instructs a *pro se* defendant to put his motions in writing, and the defendant does so, not once, but three times, it is wholly unwarranted then to penalize him for failing to object orally at what this Court later singles out as the magic moment.[11]

---

[11] The Court, referring to the "clarity" of Reed's August 29 motion seeking discharge of the indictment, suggests that he deliberately obscured his request until after the clock had run. *Ante*, at 344, 349. The Court fails to mention, however, that Reed prepared his earlier motions both without counsel and without adequate access to legal materials. It was only at the August 1 pretrial conference that the court ordered the sheriff to pro-

This should be a simple matter. Reed invoked, and the trial court denied, his right to be tried within the IAD's 120-day time limit. Section 2254 authorizes federal courts to grant for such a violation whatever relief law and justice require. The IAD requires dismissal of the indictment. Nothing in the IAD, in § 2254, or in our precedent requires or even suggests that federal courts should refrain from entertaining a state prisoner's claims of a violation of the IAD. Accordingly, I respectfully dissent.

---

vide Reed with access to legal materials. App. 85. On August 9, Reed was given two lawbooks, including one on Indiana criminal procedure, and thereafter his draftsmanship improved.