**UNITED STATES of America**

v.

**Adelino CARREIRO.**

**No. 97–063T.**

United States District Court,
D. Rhode Island.

July 9, 1998.

Kenneth P. Madden, Asst. U.S. Atty., U.S. Attorney's Office, Providence, RI, for Plaintiff.

Scott A. Lutes, Providence, RI, for Defendant.

## MEMORANDUM OF DECISION

TORRES, District Judge.

Adelino Carreiro has moved, pursuant to Fed.R.Crim.P. 29(b), for a judgment of acquittal with respect to Count V of a five-count indictment. Count V charges Carreiro with using "firearms, to wit: a Beretta Model 70, 7.65 mm pistol serial number A65949 *and* a silencer" (emphasis added) during and in relation to a drug trafficking crime, an offense for which the government seeks the minimum sentence of thirty years mandated by 18 U.S.C. § 924(c)(1).[1]

The issue presented is whether, under § 924(c)(1), a defendant may be convicted of "using" a firearm during and in relation to a drug trafficking crime when the defendant acquires the firearm from government agents who demand drugs as part of the consideration.

Because, under the circumstances of this case, I answer that question in the negative, Carreiro's motion for judgment of acquittal with respect to Count V is granted.

### Facts

In July of 1997, agents of the Drug Enforcement Administration (DEA) received information from an informant that Carreiro was selling cocaine. On July 15, the informant bought a small quantity of cocaine from Carreiro and, later, discussed with Carreiro the possibility of additional purchases. During those discussions, Carreiro expressed a desire to obtain a firearm equipped with a silencer for the purpose of murdering his drug supplier. The informant apparently stated that Carreiro could purchase a handgun and silencer for $200 and arranged a meeting between Carreiro and an agent of the Bureau of Alcohol, Tobacco and Firearms (ATF), posing as a firearms dealer, for the ostensible purpose of consummating the deal.

At that meeting, Carreiro was shown several handguns and silencers. After Carreiro made his selection, he was told that the price would be $200 plus an "eight-ball" of cocaine. The videotaped recording of the meeting clearly indicates that Carreiro was surprised upon learning that cocaine was part of the purchase price. Thus, the transcript contains the following exchange:

> Carreiro: Oh, you told me an eight ball and two hundred?
>
> CI [cooperating individual]: ... oh yeah
>
> Carreiro: Nah ... I thought you said two hundred.

Government's Transcript of July 29, 1997 Meeting at 46.

Carreiro eventually agreed to pay $200 plus a quantity of cocaine that he had in his possession and was intending to deliver to a third party after leaving the meeting. At that point, he was arrested.

A five-count indictment was returned charging Carreiro with distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) (Counts I and II); possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (Count III); possession of an unregistered silencer in violation of 26 U.S.C. § 5861(d) (Count IV) and use of a firearm and silencer during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count V). The case was tried before a jury, and, at the conclusion of the evidence, Carreiro's motion for judgment of acquittal with respect to the charge contained in Count V was denied. The jury returned guilty verdicts on all counts and Carreiro, now, renews his motion for judgment of acquittal with respect to Count V.[2]

### Judgment of Acquittal Standard

In ruling on a motion for judgment of acquittal, the Court must view the evidence

---

1. Section 924(c)(1) mandates a five-year consecutive sentence for anyone who "uses or carries a firearm" during and in relation to a drug trafficking crime. The minimum sentence required by § 924(c)(1) is increased to thirty years if the firearm is *"equipped* with a firearm silencer or firearm muffler"* (emphasis added). In this case, since the indictment charges use of a firearm "and" silencer rather than a firearm "equipped" with a silencer; and, since that was the offense on which the jury was charged, it appears that the mandatory minimum would be five years and not thirty years, as the government contends.

2. Contemporaneously with the ruling on this motion, Carreiro was sentenced to 120 months of imprisonment with respect to Counts I–IV.

in the light most favorable to the government and must draw all reasonable inferences in the government's favor. *United States v. Andrade,* 94 F.3d 9, 12 (1st Cir.1996). If the evidence, so viewed, is sufficient to permit a jury to find guilt beyond a reasonable doubt, the motion should be denied. *United States v. Doe,* 921 F.2d 340, 343 (1st Cir.1990), *cert. denied,* 513 U.S. 1003, 115 S.Ct. 517, 130 L.Ed.2d 423 (1994). On the other hand, if the evidence is insufficient to establish guilt of the offense charged, the motion for judgment of acquittal should be granted. Fed. R.Crim.P. 29(a).

### Discussion

Under 18 U.S.C. § 924(c), "Whoever, during and in relation to any ... drug trafficking crime ... uses ... a firearm" is subject to a mandatory minimum sentence prescribed by the statute. *See supra* note 1.

For purposes of § 924(c), use "connote[s] more than mere possession of a firearm by a person who commits a drug offense." *Bailey v. United States,* 516 U.S. 137, 143, 116 S.Ct. 501, 506, 133 L.Ed.2d 472 (1995). A firearm is "used" in connection with a drug trafficking crime only when it is "actively employed during the commission of the crime." *Id.* 516 U.S. at 147, 116 S.Ct. at 507.

■ A firearm need not be employed as a weapon in order to be "used" within the meaning of § 924(c). *Smith v. United States,* 508 U.S. 223, 229–37, 113 S.Ct. 2050, 2054–58, 124 L.Ed.2d 138 (1993). For example, bartering a firearm for drugs may constitute "use" of the firearm. *Bailey,* 516 U.S. at 148, 116 S.Ct. at 508 (citing with approval *Smith,* 508 U.S. at 229–37, 113 S.Ct. at 2054–58).

■ Neither the Supreme Court nor the First Circuit has considered whether the converse, bartering drugs for a firearm, also constitutes "use" of the firearm. Moreover, there is disagreement among those circuits that have considered the question.

The Fourth, Fifth and Eighth Circuits have held that receiving a firearm in exchange for drugs constitutes "use" of the firearm. *United States v. Ulloa,* 94 F.3d 949, 955–56 (5th Cir.1996), *cert. denied,* —— U.S.

——, 117 S.Ct. 1338, 137 L.Ed.2d 497 (1997); *United States v. Cannon,* 88 F.3d 1495, 1509 (8th Cir.1996); *United States v. Harris,* 39 F.3d 1262, 1269 (4th Cir.1994), *cited with approval in United States v. Johnson,* Nos. 95–5481, 95–5482, 106 F.3d 393, 1997 WL 56903, at *3 (4th Cir. Feb. 12, 1997). The *Cannon* court termed the comparison between trading a gun for drugs and trading drugs for a gun as "a distinction without a difference." *Cannon,* 88 F.3d at 1509.

On the other hand, the Seventh Circuit has held that simply receiving a firearm as payment for drugs is passive conduct that does not amount to the kind of active "use" required by *Bailey. United States v. Westmoreland,* 122 F.3d 431, 435–36 (7th Cir. 1997).

This disagreement may be more apparent than real. *Bailey* holds that, under § 924(c)(1), the critical issue in determining whether a firearm was "used" is whether it was "actively employed" by the defendant "during and in relation to a drug trafficking crime." *Bailey,* 516 U.S. at 150, 116 S.Ct. at 509. The answer to that question does not turn solely on whether the firearm was given or received in exchange for drugs. Rather, it depends upon whether the defendant, himself, affirmatively utilized the firearm in connection with the drug offense.

In those cases where acquiring a firearm in exchange for drugs was held to constitute such a "use" of the firearm, the defendant was the one who proposed drugs as the consideration. *See, e.g., Johnson,* 106 F.3d 393, 1997 WL 56903, at *3 (defendant offered to exchange drugs and money for a machine gun); *Ulloa,* 94 F.3d at 950 (defendant asked agent whether he knew of someone willing to exchange firearms for drugs or money); *Cannon,* 88 F.3d at 1500 (defendant asked agents whether she could trade drugs for a machine gun). Since the defendant was the one who provided the impetus for including drugs in the exchange, it was fair to say that he or she actively employed the firearm in connection with a drug offense.

■ In this case, by contrast, the proposal to include drugs as part of the consideration originated with government agents. Of

course, that fact, alone, does not warrant a finding that Carreiro failed to "actively employ" the firearm in connection with a drug transaction. A defendant who is willing exchange drugs for a firearm and who pursues an opportunity to do so cannot avoid responsibility simply because the opportunity was presented by government agents. *See, e.g., United States v. Gendron*, 18 F.3d 955, 961 (1st Cir.), *cert. denied*, 513 U.S. 1051, 115 S.Ct. 654, 130 L.Ed.2d 558 (1994) (explaining that it is not improper for the government merely to "provid[e] a defendant with an 'opportunity' to commit a crime").

What makes this case distinguishable is the additional fact that Carreiro had no intention of including drugs in the transaction until government agents insisted that it was part of the deal. Moreover, drugs were not proposed as a part of the contemplated exchange until the deal was about to be consummated and Carreiro's choices were to accept the new terms or abandon the purchase.

In short, although Carreiro affirmatively pursued the opportunity to acquire a firearm, he did nothing that could be described as actively employing the firearm "during or in relation to a drug trafficking crime." Under these circumstances, it strains the meaning of the word to describe Carreiro's efforts to obtain a firearm for cash as "use" of the firearm in connection with a drug trafficking offense because he did nothing more than accede to the agents' last minute demand that drugs be included as part of the consideration.

■ In any event, under these circumstances, the government is foreclosed from seeking a conviction under § 924(c)(1). The actions of government agents went beyond merely providing Carreiro with an opportunity to engage in the illegal purchase of a firearm. The agents' manifest purpose was to structure the transaction in a way that would subject Carreiro to a mandatory thirty-year sentence for using a firearm in connection with a drug trafficking crime instead of a maximum ten-year sentence for simply

purchasing the firearm for cash. There is no other plausible explanation for the agents' last minute demand that cocaine form a part of the consideration.

■ As already noted, it is permissible for government agents to provide a willing defendant with an opportunity to commit a crime and, even, to suggest the manner in which it is committed. However, it is not permissible for agents to convert a crime that a defendant is inclined to commit into a more serious offense by interjecting, at the eleventh hour, additional terms to which the defendant acquiesces in order to achieve his original goal.

■ Such conduct is analogous to the kind of government overreaching proscribed by the doctrine of sentencing factor manipulation that has been described as a "kissing cousin of the doctrine of entrapment." *United States v. Gibbens*, 25 F.3d 28, 30 (1st Cir.1994). The doctrine of sentencing factor manipulation prevents the government from "improperly enlarg[ing] the scope or scale of the crime" in order to increase a defendant's sentence. *United States v. Montoya*, 62 F.3d 1, 3 (1st Cir.1995); *see also United States v. Connell*, 960 F.2d 191, 194 (1st Cir.1992) (coining the term "sentencing factor manipulation"). Although the doctrine developed in the context of the sentencing guidelines, it also has been applied to conduct that manipulates mandatory minimum sentences imposed by statute. *Montoya*, 62 F.3d at 3 (holding that sentence factor manipulation "applies to statutory minimums as well as to the guidelines").

Unlike entrapment, which requires evidence of both improper government misconduct and a lack of predisposition by the defendant to commit the offense,[3] *United States v. Joost*, 92 F.3d 7, 12 (1st Cir.1996), *cert. denied*, —— U.S. ——, 118 S.Ct. 1545, 140 L.Ed.2d 693 (1998), sentencing factor manipulation focuses solely on the conduct of government agents. *United States v. Egemonye*, 62 F.3d 425, 427 (1st Cir.1995).

---

**3.** In this case, entrapment was not raised as a defense and its applicability is doubtful because the evidence indicates that Carreiro was a drug dealer who willingly agreed to exchange cocaine for a firearm once he learned that it was required as a condition of the transaction.

■ Sentencing factor manipulation also differs from the doctrine of "outrageous misconduct" in the degree of overreaching required. The doctrine of outrageous misconduct precludes convictions obtained by improper governmental conduct that is so extreme that it violates due process. *See United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973); *United States v. Santana,* 6 F.3d 1, 3–4 (1st Cir.1993); *United States v. Gifford,* 17 F.3d 462, 470 (1st Cir.1994) (quoting *Russell,* 411 U.S. at 432, 93 S.Ct. at 1643). The doctrine of sentencing factor manipulation, on the other hand, may be triggered by tactics that do not rise to the level of due process violations. *Egemonye,* 62 F.3d at 427.

■ Nevertheless, the overreaching must rise to a relatively high level because application of the doctrine results in "a reduction at sentencing, in the teeth of a statute or guideline approved by Congress, for a defendant who did not raise or did not prevail upon an entrapment defense at trial." *Montoya,* 62 F.3d at 4. It is insufficient to simply show that the government originated the idea, encouraged the defendant's participation or led the defendant to commit a greater crime than he previously had committed. Rather, there must be a showing that "elements like these [were] carried *to such a degree* that the government's conduct must be viewed as 'extraordinary misconduct.'" *Id.* (quoting *Gibbens,* 25 F.3d at 31) (emphasis in original).

■ Because the applicability of sentencing factor manipulation depends upon facts that may vary considerably from case to case, the First Circuit has declined to create detailed rules limning its parameters. *Id.* However, it is clear that the focus is on whether, why, how and to what degree the conduct of government agents "enlarged or prolonged the criminal conduct in question." *Id.*

As already noted, sentencing factor manipulation occurs when government agents "improperly enlarge the scope or scale of the crime." *Id.* Typically, such manipulation consists of actions designed, solely, to enhance the sentence for that crime. Examples include charging "below market" prices for drugs in order to increase the quantity of drugs purchased thereby triggering a higher statutory minimum sentence, *see id.,* and telling the defendant that the money he is laundering was the proceeds of drug trafficking in order to enhance the sentence based upon the defendant's knowledge that the laundered funds were criminally derived property. *See Connell,* 960 F.2d at 194.

Here, the government sought to achieve the same result by increasing the magnitude of the crime, itself. The agents' transaction converted the offense from unlawful purchase of a firearm to use of a firearm in connection with a drug trafficking offense, thereby artificially inflating Carreiro's potential sentence. Such tactics are, simply, another form of sentencing factor manipulation.

The difficulty, in this case, lies in determining the appropriate remedy. Ordinarily, the factors improperly inflating the sentence would be disregarded and the defendant would be sentenced on the basis of the unadorned offense that he committed. Here, however, it is impossible to separate the crime from the punishment. Section 924(c)(1) both defines the offense and mandates the sentence that flows automatically from conviction. Manipulation of the sentence consists of manipulation of the crime and a court cannot redress the matter without refusing to recognize convictions obtained in that manner. Accordingly, the appropriate remedy is to acquit Carreiro of the charge contained in Count V.

### Conclusion

For all of the foregoing reasons, Carreiro's motion for judgment of acquittal with respect to Count V of the indictment is granted.

IT IS SO ORDERED,