**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0537n.06
Filed: August 29, 2008

**No. 06-4286**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|                                         |     |                                    |
|-----------------------------------------|-----|------------------------------------|
| **QUAMAINE BROOKS,**                    | )   |                                    |
|                                         | )   |                                    |
|     **Petitioner-Appellant,** | )   | **ON APPEAL FROM THE**             |
|                                         | )   | **UNITED STATES DISTRICT**         |
|                                         | )   | **COURT FOR THE NORTHERN**         |
|     **v.**          | )   | **DISTRICT OF OHIO**               |
|                                         | )   |                                    |
| **CARL ANDERSON, Warden,**              | )   |                                    |
|                                         | )   |                                    |
|     **Respondent-Appellee.** | )   |                                    |

**BEFORE:  COLE and GRIFFIN, Circuit Judges; and SARGUS, District Judge.** [*]

**SARGUS, District Judge.**    Petitioner-Appellant Quamaine Brooks appeals the decision

of the district court denying his petition for a writ of habeas corpus.  For the reasons that follow,

the decision of the district court is affirmed.

**I.**

**A.    FACTS**

The Petitioner-Appellant Quamaine Brooks ("Appellant" or "Brooks") was charged with

a serious assault against an infant family member, Angelique Stratford.  At the time of the

incident, Brooks was a twenty-year-old high school junior.  He lived with his mother, Geraldine

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

Brooks, together with Angelique and a number of other extended family members.

At trial, the prosecution contended that Brooks assaulted Angelique and inflicted severe injuries resulting from "shaken baby syndrome." Michael Brooks, nephew of the Appellant, was an eight-year-old residing in the same home. He testified at trial that he saw the appellant punch Angelique in her back and side and also hold her upside down by her leg. Appellant denied that he had any physical contact with the infant. While there was no dispute that Angelique was severely injured, the evidence against Brooks included the testimony of Michael Brooks, and Brooks' false claim that he was at work or school at the time of the assault, an alibi later discredited by the prosecution.

Brooks was charged and tried together with his mother, Geraldine Brooks ("Mrs. Brooks"), who was charged with child endangering. Mrs. Brooks and several family members, other than Appellant, arranged to have one lawyer represent both Mrs. Brooks and Appellant. Before the trial began, the trial judge engaged in the following colloquy:

> THE COURT: Okay. Now, I don't know the facts at all of this case. It could be that there are facts that may be favorable to one of you and unfavorable to the other. Do you know that and do you understand that by having the same attorney, there may be a fact favorable to you, Mrs. Brooks, but because of it, it would be unfavorable to your husband [sic]? I don't know what your attorney would choose to do in that instance.
>
> Do you each understand that by having one attorney, you may be giving up some of your own individual rights? Not rights in the terms of constitutional but factors that may inure to your benefit even though they might hurt the other one. Do you understand that?
>
> DEFENDANT QUAMAINE BROOKS: Yes.
>
> THE COURT: Do you understand that?

2

DEFENDANT GERALDINE BROOKS:    Yes.

THE COURT:    And it's my understanding that you choose to each have the same attorney?

DEFENDANT GERALDINE BROOKS:    Yes.

THE COURT:    Mr. Brooks?

DEFENDANT QUAMAINE BROOKS:    Yes.

THE COURT:    Now, Mr. Jordan, I assume based on your competency that you have gone over conflict of interest with your clients and that you have kept that in mind when reviewing the evidence as you may understand the evidence to be?

MR. JORDAN:    I have, your Honor.

THE COURT:    However, you and I both know by experience that the evidence that comes out in the courtroom isn't always as we anticipate it is.

MR. JORDAN:    That's correct.

THE COURT:    You understand that you know if later shown that there was a conflict of interest that inured to one of your clients' detriments, that is a grave condition and a very serious matter under the rules of ethics?  You understand that, and you are taking that risk?  You understand that, Mr. Jordan?

MR. JORDAN:  Yes, I understand that, your Honor.

During the trial, defense counsel called Wadell Jefferson as a defense witness.  Jefferson lived in an apartment directly above the residence in which Angelique was attacked.  Jefferson testified that she knew that Elaine Brooks, a sister of Geraldine Brooks, lived in the same apartment with Appellant and his mother, and that Angelique's parents had left Angelique with Elaine Brooks.  Defense counsel then attempted to elicit testimony that Elaine Brooks suffered a breakdown in February of 1998, just prior to Angelique being injured.  The following exchange

3

occurred during the trial:

Q     Do you know approximately how long Angelique stayed in the care of Elaine?

A     Until like February, the second week in – second week in February.

Q     During that time period, did you have an occasion to experience something unusual with Elaine?

A     Yes.

Q     Could you please describe to the jury what that experience was?

A     She –

MS. NAIMAN:     Objection.

THE COURT:     Approach the bench.

- - - - -

(A discussion was had at the bench, on the record, out of the hearing of the jury:)

- - - - -

THE COURT:     Go ahead.

MR. JORDAN:     Your Honor, at this time she is going to testify that in February of 1998 that Elaine suffered some kind of a mental breakdown or what not, that they came up to her apartment and that she hurt her – hurt her children and she had to be taken away by the police and the ambulance to seek care and that she was treated and then returned back to the house just prior to the time period of February 22nd through March 7th. And I believe at this time Elaine has been there at the house the whole time that Angelique was present during the time and, again, that my theory is that

4

Elaine could have been the one who injured this child.

THE COURT: Doesn't this kind of conflict with your other client's rights because if this is true and Geraldine knew of Elaine's violent tendency and Elaine did in fact hurt this baby, wouldn't that really make your client guilty of child endangering? Isn't this a conflict between your clients here, Mr. Jordan, just the kind I questioned all throughout the pendency of this case?

MR. JORDAN: Your Honor, she is going to question – she gives Elaine medication and she's fine on the medication. Any kind of outbreak is –

THE COURT: Well, then, what's –

MS. NAIMAN: First of all, if I heard the – did you state she is going to say that Elaine hurt those children? Is that what you said?

MR. JORDAN: Yes.

MS. NAIMAN: I'd like to know on what basis you are – I mean, all you showed me was a copy of a CFS report that indicated that Wadell said that Elaine said she was going to hurt the babies, which is hearsay. Wadell never reported that her children were hurt. So, I would say first of all that this is perjuring herself because she is making this story more serious than it is and the statement was, Elaine said she was going to do something, not that she did hurt anybody.

THE COURT: Okay. That's number one. Do you have any other objection to this testimony coming in and if so state your objection, please.

MS. NAIMAN: Well, it is – well, it is going to be a conflict especially as to Geraldine, not

5

so much as to Quamaine. And it's my understanding that you had this witness on your witness list from the beginning and you knew what she was going to testify to.

THE COURT: Which is a total conflict to your client, right, which puts me in a position of possibly granting a mistrial here because you cannot put her on to make the jury believe that she is a dangerous person and then somehow absolve you by saying your client is going to say that I trusted her. That is ludicrous.

MR. JORDAN: BJ said she trusted her also.

THE COURT: I don't care. It's a conflict of interest, number one. Number two, if you want to show Elaine's a violent person, bring on Elaine. You are not going get into hearsay. Everything you have gotten is hearsay and quite frankly I didn't hear – I don't know why I didn't hear an objection earlier. Sustained.

(JA 868-872).

Later, defense counsel asked Jefferson:

Q     Do you know how those scratches came to be on Angelique's body?

THE COURT: Yes or no only.

A     Yes.

Q     How did you know this?

A     I went to a meeting at the –

MS. NAIMAN: Objection.

THE COURT: Sustained. Sustained. Did you see the scratches

6

occur?

THE WITNESS:    No.

THE COURT:    Move on.  One more question on that issue you could ask.

Q    Do you know approximately what time you came downstairs on Saturday the 7th?

A    About 9:00.

Q    I'm sorry?

A    9:00.

Q    Was Quamaine present?

A    No.

Q    Did you have occasion to tell Geraldine anything with regards to Michael and Angelique?

A    Yes.

Q    And what did you tell them?

MS. NAIMAN:    Objection.

THE COURT:    Sustained.  Approach the bench.

- - - - -

(A discussion was had at the bench, on the record, out of the hearing of the jury)

- - - - -

THE COURT:    You keep trying to elicit hearsay.  First of all, I'm going to tell you, you could have asked about the scratches, you could ask did anyone admit to you that they themselves caused the scratches.  I don't know what your answer is

7

going to be. But you have to ask the questions in a
way they do not appear to elicit the hearsay. I will
sustain objections always. So, that's the question I
meant that you could ask. Now, wait a minute. I
don't know what's going on here. What's your
objection?

(JA 875-876).

The jury subsequently convicted Appellant Brooks of felonious assault and child

endangering, and he was sentenced to serve a term of eleven years in prison. Mrs. Brooks was

convicted of child endangerment.

## B.    PROCEDURAL BACKGROUND

Following their convictions, Appellant and his mother retained another attorney, and both

appealed their convictions. No issues related to trial counsel's potential conflict of interest were

raised on direct appeal. The Ohio Court of Appeals for the Eighth District affirmed the

convictions on March 30, 2000. Appellant thereafter filed a timely appeal to the Ohio Supreme

Court, which dismissed the appeal for failure to comply with a series of filing requirements.

Appellant then filed a Motion for Delayed Appeal in the Ohio Supreme Court, which the Court

denied on November 22, 2000.

Brooks also filed a timely Application for Reopening under Ohio App. R. 26(B), which

the Ohio Court of Appeals denied on August 21, 2001. Brooks appealed the denial of that

application to the Ohio Supreme Court, which denied relief on December 5, 2001.

On July 22, 2002, Brooks filed a petition in federal district court seeking a writ of habeas

corpus. The petition contains four claims including: (1) trial counsel was ineffective and should

have withdrawn from the case in light of an actual conflict of interest;  (2) the trial court erred by

8

not declaring a mistrial, given an actual conflict of interest on behalf of trial counsel; (3) appellate counsel was ineffective by failing to raise meritorious issues on appeal; (4) the state appellate court erred by refusing to reopen the appellant's appeal despite evidence demonstrating a conflict of interest on the part of both trial and appellate counsel.

On August 19, 2003, the Magistrate Judge for the Northern District of Ohio issued a Report and Recommendation finding merit as to all four grounds for relief. The Magistrate Judge first found that trial counsel had an actual conflict of interest which became apparent during the testimony of Wadell Jefferson. The Magistrate Judge also concluded that the trial judge excluded Jefferson's testimony because of the apparent conflict, and incorrectly characterized her testimony as hearsay. The Magistrate Judge found that trial counsel failed to pursue or elicit testimony regarding the alleged violent behavior of Elaine Brooks, which could have exculpated the appellant while inculpating Mrs. Brooks. Based upon these conclusions, the Magistrate Judge recommended that a conditional writ be granted directing the state of Ohio to retry the appellant or, alternatively, to direct the respondents to accord Brooks a new appeal.

The district court disagreed with the recommendation, and found that Brooks had knowingly and voluntarily waived the conflict of interest before the trial began. Additionally, the district judge concluded that, if the proferred testimony was properly excluded as constituting inadmissible hearsay, no actual conflict of interest could have arisen. The court concluded, as did the state appellate court, that the proffer made by trial counsel was muddled as to whether the witness could or could not testify as to personal knowledge. Given the lack of clarity, the alleged inconsistency between the witness's testimony and prior statements, together with other evidence inculpating the appellant, the district court concluded that exclusion of the proffered testimony

9

"did not violate constitutional standards of due process." *Brooks v. Bobby*, 2006 U.S. Dist. LEXIS 59205 (N.D. Ohio Aug. 22, 2006).

Appellant now appeals the decision of the district court. Brooks contends that he was deprived of his constitutional right to be represented by an attorney who did not labor under an actual conflict of interest. He also asserts that, contrary to the decision of the district court, he did not intelligently, knowingly and voluntarily waive his right to be represented by conflict-free counsel.

## II.

The district court had jurisdiction over this action based upon 28 U.S.C. § 2254, which authorizes the issuance of a writ of habeas corpus upon a showing that a petitioner was in state custody in violation of the United States Constitution.

Since the district court did not hold an evidentiary hearing, this court reviews the lower court's judgment *de novo*. *Ramonez v. Berghius*, 490 F.3d 482, 486 (6th Cir. 2007).

## III.

The Antiterrorism and Effective Death Penalty Act of 1996 provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254 (d)(1) and (2).

As this court held in *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir. 2008):

> Under the "contrary to" clause, a federal court may grant habeas relief if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Bugh v. Mitchell*, 329 F.3d 496, 501 (6th Cir. 2003).

> "'[C]learly established Federal law, as determined by the Supreme Court of the United States,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Williams v. Bagley*, 380 F.3d 932, 942 (6th Cir. 2004) (quoting *Williams*, 529 U.S. at 412, 120 S.Ct. 1495).

The Supreme Court recognized as early as *Glasser v. United States*, 315 U.S. 60 (1942), that the Sixth Amendment right to the effective assistance of counsel is violated if one attorney represents two co-defendants whose interests are in conflict. More recently, the Supreme Court has noted the dangers of joint representation, ranging from a failure to challenge the admission of evidence damaging to one client, and favorable to the other, to the conflict during sentencing regarding claims of the relative culpability of each defendants. *See, e.g., Holloway v. Arkansas*, 435 U.S. 475, 482 (1978); *Wheat v. United States*, 486 U.S. 153, 168 (1988).

This appeal is premised upon the claim that trial counsel labored under an actual conflict of interest. The Ohio state court of appeals correctly framed the issue as follows:

> In order to establish ineffective assistance of counsel in this case, appellate counsel had to establish an actual conflict existed. An actual conflict would not exist if it depended on inadmissible evidence, such as hearsay. . . [citations omitted].

> If Wadell's hearsay statements were unquestionably admissible, then

11

there would have been an actual conflict of interest. There could be no doubt that trial counsel could have pursued a strategy which would incriminate one of his clients while it also was a benefit to the other client. Thus the issue is the admissibility of the hearsay statements.

*State v. Brooks*, Case Nos. 75711, 75712 (Ohio App. 8th Dist., Aug. 14, 2001).

As the Ohio Court of Appeals noted, the constitutional question of whether counsel labored under a conflict of interest turns on the admissibility of the testimony of Wadell Jefferson, as determined by the Ohio Rules of Evidence. While an improper application of such rules does not itself provide the basis for federal habeas corpus relief, an actual conflict of interest by trial counsel cannot be obviated by the erroneous exclusion of otherwise admissible evidence. This is particularly the case if the exclusion of evidence was based on the trial judge's concern that admitting the testimony of Jefferson would create such conflict. An erroneous exclusion of her testimony does not avoid what would otherwise be an actual conflict of interest.

As trial counsel asked Jefferson to testify regarding Elaine Brooks, as set out above, the prosecution made an objection, at which time the trial judge convened a side-bar conference and immediately raised the issue of defense counsel's conflict of interest. The prosecutor contended that, if Jefferson intended to testify that Elaine Brooks had hurt children on a prior occasion, such statements would be inconsistent with her previous statements and possibly perjury.

It is unclear whether the trial judge excluded Jefferson's testimony based upon trial counsel's conflict of interest or on the claimed hearsay nature of the testimony. From the entirety of the transcript of Jefferson's testimony, however, it is clear that the trial judge viewed her testimony regarding Elaine Brooks as constituting inadmissible hearsay. Wadell was asked if she knew how the scratches she saw on the baby were inflicted. The witness began her answer by

12

describing a meeting she went to. The judge cut off her answer and asked her, "Did you see the scratches occur?" (JA 875). When the witness answered in the negative, the trial judge made it clear that he viewed her testimony as inadmissible hearsay. (JA 876).

The record appears to substantiate the conclusion of the trial court that the offered testimony was inadmissible hearsay. Moreover, the trial counsel did not make a proffer that would provide a basis to conclude that the testimony was actually admissible. Ohio Rule of Evidence 103(A)(2) requires a party to advise the court of the substance of the offered evidence that the court intends to exclude, unless such information is obvious from the record.

As to whether the proposed testimony by Jefferson was hearsay, the district court correctly observed that, because federal habeas corpus relief does not lie for errors in the application of state law unless such errors result in the denial of a fundamentally fair trial, federal habeas courts are not permitted to substitute their judgment for that of a state court on a state evidentiary ruling. (JA 1213-16). It is well-settled "that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Thus, this Court has held that federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). It stands to reason that this is true even when the petitioner is not seeking habeas relief on the state court evidentiary determination at issue. *Cf. Adams v. Smith*, 280 F. Supp. 2d 704, 721 (E.D. Mich. 2003) (rejecting claim of ineffective assistance of counsel for the failure to object to hearsay based on state court's determination under state law that testimony at issue was not hearsay).

13

In this case, the trial court determined that Jefferson's testimony would have been hearsay. It is not the province of this Court to substitute its judgment for that of the state trial court on this state-law evidentiary decision. Although the precise issue before the Court is whether petitioner received ineffective assistance of counsel due to the fact that counsel was laboring under an actual conflict of interest, resolving that issue requires this Court to determine whether the proposed testimony by Jefferson was hearsay. The record supports the conclusion of the state courts.

To the extent petitioner is now claiming that his representation was ineffective based on his trial counsel's apparent failure to pursue a defense or investigate the possibility that Elaine Brooks may have injured Angelique, that argument was not raised on direct appeal at any level. There is no evidence in the trial transcript or elsewhere in the record establishing whether the attorney did, in fact, fail to investigate or pursue this defense. Also, no facts or evidence were proffered or admitted at trial that might lead to the conclusion that Elaine Brooks may have or did injure Angelique or any other child. As the district court found, petitioner had the opportunity post-trial to investigate Elaine Brooks' involvement; he did not take advantage of any such procedures to create a record establishing his trial attorney's ineffectiveness or failure to pursue. *Brooks*, 2006 U.S. Dist. LEXIS 59205, *41-42. There is therefore no record upon which this Court could find that trial counsel's ineffectiveness "undermined the proper functioning of the adversarial process" and resulted in a fundamental defect at trial amounting to a miscarriage of justice or violation of due process, for which collateral relief is available. *See Strickland v.*

*Washington*, 466 U.S. 668 (1984); *Reed v. Farley*, 512 U.S. 339, 348, 353 (1994).[1]

## III.

For these reasons, the decision of the district court is **AFFIRMED.**

---

[1]Given the conclusion that counsel for petitioner did not labor under a conflict of interest, the Court does not address the question of whether Brooks had waived such right in a constitutional manner.